Of Counsel:
CRONIN, FRIED, SEKIYA,
 KEKINA & FAIRBANKS

DAVID L. FAIRBANKS        735-0
HOWARD G. McPHERSON    5582-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-1433
Email:    hmcpherson@croninfried.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CLIFFORD McARTHUR RIGSBEE, as Personal Representative of the Estate of Clifford Meredith Rigsbee, deceased,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY and COUNTY of HONOLULU, a municipal corporation,<br><br>          Defendant. | COMPLAINT; SUMMONS<br>(Admiralty) |

## COMPLAINT

Acting as the duly appointed Personal Representative of the Estate of Clifford Meredith Rigsbee, deceased, Plaintiff Clifford Mcarthur Rigsbee complains against Defendant City and County of Honolulu, as follows:

## PRELIMINARY ALLEGATIONS
(Parties, Jurisdiction, and Venue)

*The Plaintiff*

1. Plaintiff Clifford McArthur Rigsbee is the son of decedent Clifford Meredith Rigsbee ("Decedent") and is the duly appointed Personal Representative of his father's Estate ("Decedent's Estate").

*The Decedent*

2. At all times material hereto, Decedent was a citizen and resident of the State of Hawaii, and was a "non-seafarer," as that term is used in *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199 (1996). Decedent was born on January 9, 1953.

*The Defendant*

3. Defendant City and County of Honolulu ("the City" or "Defendant"), is a municipal corporation organized and existing under the laws of the State of Hawaii. The Honolulu Fire Department ("HFD") is a department and/or agency of the City. HFD employees are also employees of the City.

*Jurisdiction and Venue*

4. As alleged more fully below, the incident and activities giving rise to this action: (1) occurred upon navigable waters within the State of Hawaii off the southeast coast of Oahu, less than one marine league from shore, (2) had a

potentially disruptive impact on maritime commerce, and (3) had a substantial relationship to traditional maritime activity.

5. The Court has subject matter jurisdiction in admiralty pursuant to 28 U.S.C. 1333(1). This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

6. Venue is properly laid in this district in that the acts and omissions complained of occurred here.

## OPERATIVE FACTS
(The Subject Incident)

7. On June 14, 2016, Decedent was employed by HFD with the rank of Fire Fighter ("FF") III and was assigned that day to HFD rescue watercraft ("RWC") training on the southeast shore of Oahu near Diamond Head.

8. The training was conducted under the command of HFD Captain Alan Park and was planned to take place in the ocean where large waves were expected to build throughout the day.

9. Prior to the training, the National Weather Service ("NWS") had issued a high-surf advisory for the southeast facing shores of Oahu that day, with five-to-eight-foot wave faces expected.

10. The objectives for the training included beach launching operations at Kaimana Beach Park and familiarization of entry/exit zones for the various surf breaks and shorelines in the area.

11. At approximately 10:30 a.m., Decedent and FF I Matthew Martin ("Martin") proceeded offshore from Kaimana Beach for training aboard the HFD's Boat 7, a RWC consisting of a jet ski with attached sled, which was a "vessel" within the meaning of 1 U.S.C. § 3. Martin was operating the vessel and Decedent was riding prone atop the sled.

12. The vessel proceeded to open ocean and turned east toward Diamond Head Lighthouse, out of the view of Captain Park at Kaimana Beach.

13. A few minutes later, Martin drove Boat 7 through three consecutive waves, each of which was eight-feet-high or taller, the first two of which had already crested and broken. Immediately after the vessel travelled over the third wave, Martin looked back and saw Decedent face down in the water not moving, about five feet away from the vessel.

14. Martin determined Decedent was unresponsive and called for help. With the assistance of an off-duty firefighter surfing nearby, Decedent was brought ashore at Makalei Beach Park, east of the vessel's launch site.

15. Personnel from HFD and the City's Ocean Safety Department and Emergency Medical Services were summoned to provide lifesaving care for Decedent at the scene. Decedent was then transported by ambulance to Straub Medical Center ("Straub") at approximately 11:30 a.m.

16. Decedent died at Straub approximately 60 hours later, at 11:25 p.m. on June 16, 2016. The cause of his death was determined at autopsy by the City Medical Examiner to be blunt force injury to the head and neck with cervical vertebrae fractures and spinal cord injury.

17. As hereinafter more fully appears, Decedent was conscious and in pain during a substantial portion of the hours at Straub before his passing, aware of his impending death.

FIRST CAUSE OF ACTION
(Negligence – Survival Damages)

18. Plaintiff incorporates as though fully set forth herein all of the allegations of paragraphs 1-17 hereinabove.

19. This action arises under general maritime law recognized in *Moragne v. States Marine Lines,* 398 U.S. 375 (1970), *Sea-Land Services, Inc, v. Gaudet,* 414 U.S. 573 (1974), *Sutton v. Earles,* 26 F.3d 903 (9th Cir. 1994), and *Evich v. Morris,* 819 F.2d 256 (9th Cir. 1987). Federal maritime remedies may be supplemented by the law of Hawaii pursuant to *Yamaha Motor Corp., USA v. Calhoun,* 516 U.S. 199 (1996).

20. Pursuant to *In re Catalina Cruises, Inc.,* 137 F.3d 1422 (9th Cir. 1998), and other authorities, during the aforementioned HFD offshore RWC training, under general maritime law the City and all of its involved employees and agents owed Decedent a duty of reasonable care under the circumstances, requiring,

5

among other things, "where the risk is great because of high seas, an increased amount of care and precaution[.]" *Id.* at 1425-1426.

21. The City, through its employees and agents involved in the aforementioned RWC training, beached the duty owed to Decedent in multiple ways, including but not limited to the following:

(a) in failing to perform a proper and adequate risk assessment for the area and sea conditions in which the RWC training and injury occurred, especially given the high-surf advisory in effect on the day of this incident and the City's actual notice of prior injuries during RWC training;

(b) in failing to provide effective supervision and instead allowing the RWC training to proceed unsupervised out the view of the training commander Captain Park; and

(c) in failing to identify appropriate training objectives and establish appropriate safety procedures, and instead allowing the RWC training to proceed in a wave impact zone and/or while traversing waves or swells, despite the fact that wave heights were large and expected to build throughout the day.

22. As direct, proximate, and legal result of the hereinabove alleged breaches of duty by the City, Decedent consciously suffered great physical and emotional pain and distress before his death, all to his nonpecuniary damage in an

amount to be determined at the time of trial herein, and for which Decedent's Estate is entitled to compensation.

23. Prior to his injury during the RWC training, Decedent was only 63 years old, extremely fit, and in excellent health. As a further direct, proximate, and legal result of the hereinabove alleged breaches of duty by the City, Decedent suffered a hedonic loss of his "enjoyment of life," as that phrase is used in HRS § 663-8.5, *Montalvo v. Lapez,* 884 P.2d 345, 347 n.2 (Haw. 1994), and *Hambrook v. Smith,* 2016 WL 4408991 (D.Haw.) at *40-41, all to his further nonpecuniary damage in an amount to be determined at the time of trial herein, and for which Decedent's Estate is entitled to compensation.

24. As a further direct, proximate, and legal result of the hereinabove alleged breaches of duty by the City, Decedent incurred a loss of future earnings and income, medical expenses, and expenses of funeral and burial, all to his pecuniary damage in an amount to be determined at the time of trial herein, and for which Decedent's Estate is entitled to compensation.

SECOND CAUSE OF ACTION
(Negligence – Wrongful Death Damages)

25. Plaintiff incorporates as though fully set forth herein all of the allegations of paragraphs 1-24 hereinabove.

26. The hereinabove alleged breaches of duty by the City, and each of them, were direct, proximate, and legal causes of Decedent's death.

27. Decedent was only 63 years old on the date of this death. Immediately prior to his death, he was an adult person in excellent physical and mental health and condition, and was a loving and supportive father and grandfather. As a direct, proximate, and legal result of Decedent's death, Plaintiff has suffered the permanent loss of his father's society, including but not limited to loss of his care, comfort, services, guidance, training, instruction, advice, example, nurture, support, love, affection, and devotion, all to Plaintiff's nonpecuniary damage in an amount to be proven at the time of trial herein.

WEREFORE, Plaintiff prays judgment be entered in his favor, and against Defendant, awarding Plaintiff:

A. Pecuniary and non pecuniary damages according to proof;

B. Costs of suit and attorneys' fees;

C. Prejudgment and post-judgment interest according to law; and

D. Such further relief as the Court deems just and proper.

DATED: Honolulu, Hawaii, October 23, 2017.

/s/ Howard G. McPherson
DAVID L. FAIRBANKS
HOWARD G. McPHERSON
Attorneys for Plaintiff